IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| JAMIE ANTHONY, TITUS BUSSEY, MARVIN JARRETT, KELVIN TURNER, ANTHONY WHITE, OCTAVIUS WHITE, and WILLIE WILSON, | CIVIL ACTION FILE NO.: 3:16-cv-70-TCB-RGV |
| Plaintiffs, | JURY TRIAL DEMANDED |
| vs. | IN COLLECTIVE ACTION |
| CONCRETE SUPPLY COMPANY, INC., | |
| Defendant. | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

COME NOW Plaintiffs Jamie Anthony, Titus Bussey, Marvin Jarrett, Kelvin Turner, Anthony White, Octavius White, and Willie Wilson ("Plaintiffs"), on behalf of themselves and others similarly situated, in their Complaint against Defendant Concrete Supply Company, Inc. (hereinafter "Concrete Supply" or "Defendant") and show the Court as follows:

1

## INTRODUCTION

1. This is an action arising out of the Fair Labor Standards Act (the "Act" or "the FLSA"), 29 U.S.C. §§ 201-216. Plaintiffs are residents of the State of Georgia and are all current or former employees of Concrete Supply, which was the FLSA employer of Plaintiffs for the relevant period of time.

2. Plaintiffs serve and have served in the capacity of purely intrastate drivers while working at Concrete Supply's Georgia location, and during at least the period April 28, 2013 – April 1, 2016 were paid wages largely based on the revenue the hauls they carried and delivered in their trucks generated. Plaintiffs bring this action to recover from Defendant unpaid regular time compensation, unpaid overtime compensation, liquidated damages, attorneys' fees and costs pursuant to Section 6(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b), as described below.

3. During Plaintiffs' employment, Plaintiffs worked between 40 to 70 hours per week most weeks, hauling loads to and from Georgia locations and hauling loads that were not in an interstate stream of commerce.

4. For the period of at least April 28, 2013 through April 1, 2016, Plaintiffs were required to drive their trucks home each evening. However, because

Plaintiffs were compensated based on a percentage of the hauls they made during each day, they were not compensated for the time spent driving each morning from their homes to Junction City, GA to pick up the sand, gravel, rock, or dirt required for their first delivery. Additionally, they were not paid for any time between dropping their last delivery in the evening and driving home. On average, these extra morning and evening trips amounted to approximately 15 extra hours per week for which Concrete Supply did not compensate Plaintiffs.

5. Additionally, Plaintiffs daily deliveries caused them to work more than 40 hours per week.

6. Consequently, and in light of this revenue-based policy and policy for not paying employees for all hours worked, including, but not limited to, the first and last trips each day, Plaintiffs were never paid time and one-half wages for any hours worked over 40 hours weekly as required by the Fair Labor Standards Act.

## COLLECTIVE ACTION

7. Plaintiffs bring these FLSA claims as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), and seek relief on a collective basis challenging, among other things, Defendant's failure to pay overtime and failure to pay

employees for all hours worked. The named Plaintiffs hereby consent to be a part of this collective action.

8. The class of employees on whose behalf Plaintiffs bring this "opt-in" collective action are similarly situated because they are non-union employees who have been or are employed in positions similar to those of the individually named Plaintiffs, at the same location as those of the individually named Plaintiffs, and were subject to the same or similar unlawful practices as the individually named plaintiffs. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendant, and potential plaintiffs may easily and quickly be notified of the pendency of this action.

## THE PARTIES AND JURISDICTION AND VENUE

9. At all times relevant hereto, Defendant Concrete Supply was and is a Georgia corporation doing business in this judicial district with an office located at 205 Georgia Avenue West, Fayetteville, Georgia, 30214. Defendant is subject to actions of this kind and nature and may be served by Rule 4 of the Federal Rules of Civil Procedure through its registered agent for service.

10. Defendant's business activities involve those to which the Fair Labor Standards Act applies, and Defendant is an employer under the FLSA, 29 U.S.C. § 203. For example, Defendant is engaged in interstate commerce.

11. Additionally, the intrastate customers to whom Plaintiffs and those similarly situated to Plaintiffs deliver rocks, dirt, sand and gravel are delivering goods or materials that have been produced for commerce. By way of example, Defendant delivers rocks to Piedmont Paving, Inc., an asphalt paving company based in Newnan, Georgia who focuses on base and paving projects, as well as roadway construction.

12. On information and belief, Defendant's most previous yearly revenue exceeded $65 million.

13. Plaintiff Anthony is a Georgia resident who worked for Defendant Concrete Supply from approximately February 2012 through August 2015. Plaintiff Anthony served as a driver hauling sand, gravel, rocks and dirt from Junction City, Georgia to various other locations within Georgia.

14. Plaintiff Bussey is a Georgia resident who worked for Defendant Concrete Supply from approximately May 2012 through January 2015. Plaintiff

Bussey served as a driver hauling sand, gravel, rocks and dirt from Junction City, Georgia to various other locations within Georgia.

15. Plaintiff Jarrett is a Georgia resident who worked for Defendant Concrete Supply from approximately April 2014 through January 2015. Plaintiff Jarrett served as a driver hauling sand, gravel, rocks and dirt from Junction City, Georgia to various other locations within Georgia.

16. Plaintiff Turner is a Georgia resident who began working for Defendant Concrete Supply in approximately September 2014 and continues to work there today. Plaintiff Turner serves as a driver hauling sand, gravel, rocks and dirt from Junction City, Georgia to various other locations within Georgia.

17. Plaintiff Anthony White is a Georgia resident who worked for Defendant Concrete Supply from approximately February 2014 – August 2014. Plaintiff Anthony White served as a driver hauling sand, gravel, rocks and dirt from Junction City, Georgia to various other locations within Georgia

18. Plaintiff Octavius White is a Georgia resident who began working for Defendant Concrete Supply in approximately May 2013 and continues to work there today. Plaintiff Octavius White serves as a driver hauling sand, gravel, rocks and dirt from Junction City, Georgia to various other locations within Georgia.

19. Plaintiff Wilson is a Georgia resident who worked for Defendant Concrete Supply from approximately April 2012 through October 2014. Plaintiff Wilson served as a driver hauling sand, gravel, rocks and dirt from Junction City, Georgia to various other locations within Georgia.

20. This Court has original jurisdiction upon the Plaintiffs' claims, based upon the Plaintiffs' FLSA allegations, and pursuant to 28 U.S.C. §1331 and §1337.

21. Venue is proper in this Court under 28 U.S.C. §§1391(b) and (c).

22. Concrete Supply hauls, among other products, sand, rocks, gravel, and dirt, to, among others, concrete companies, building contractors, site developers, landscape architects, contractors, golf courses, recreational areas, and residences throughout Georgia and other states.

23. Concrete Supply employs drivers, including Plaintiffs, to haul such sand, rocks, gravel, and dirt from Junction City, Georgia to its customers throughout Georgia.

24. From at least April 28, 2013 through April 1, 2016, Defendant promised Plaintiffs that they would be compensated at the stated rate of 27% of the revenue earned by each truckload of sand, rocks, and gravel delivered. However, Plaintiffs

are informed and believed that they were actually paid 27% of an amount <u>less than</u> the actual revenue earned by each truckload of sand, rocks, and gravel delivered.

25.  Plaintiffs were not paid hourly, except to the extent they made any dirt deliveries, which were compensated at approximately $15/hour.

26.  For the period April 28, 2013 through April 1, 2016, in addition to making their deliveries of the sand, rocks, gravel, and dirt, Plaintiffs were required to drive Defendant's trucks home each evening.

27.  Plaintiffs' work was not and is not subject to any exemption to the FLSA and as such, time and one-half overtime should have been paid for all hours worked over 40 hours in a given work week for the period April 28, 2013 through April 1, 2016.

28.  Defendant never paid time and one-half overtime to these nonexempt driver Plaintiffs, despite the fact that they regularly worked more than 40 hours per week and maintained routes solely within Georgia.

29.  Additionally, in some instances Plaintiffs were not paid full credit for hours worked and/or required to work uncompensated "off the clock" time, including, but not limited to, the time they spent washing their trucks, the time spent

transporting the trucks to Junction City, GA to pick up their first delivery for the day, and the time spent after the last delivery driving home.

30. Concrete Supply's violations were willful and knowing. Concrete Supply refused to pay drivers one and one-half overtime for hours worked over 40 hours weekly despite knowing that the extra time spent making deliveries or transporting the trucks throughout Georgia before and after such deliveries caused the drivers to work more than 40 hours per week.

31. By way of example, at some point between May and October 2013, Defendant's owner learned that certain drivers, including Plaintiff Octavius White, had discovered that they were due overtime pay. The owner called in Plaintiff Octavius White to his office and told Plaintiff Octavius White he would like to fire him, but decided to place him on 90 days' probation instead. Plaintiff Octavius White alleges that this probation period was a direct result of the owner discovering that the drivers were informed and upset about the overtime pay policy, or lack thereof.

### Department of Labor Investigation

32. Prior to April 1, 2016, the U.S. Department of Labor ("DOL") commenced an investigation into Defendant's pay practices with respect to its driver employees, including at least Plaintiffs.

33. As a result of that investigation, the DOL determined that Defendant's driver employees were due back overtime wages based on an average of only 5 overtime hours per week.

34. No facts support the determination that the drivers, including Plaintiffs, only worked on average 5 overtime hours per week. In fact, Plaintiffs contend they worked on average 20-30 overtime hours per week.

35. During the investigation, Plaintiff Anthony contacted a DOL investigator and advised the investigator that any back pay calculation based on only 5 hours of overtime per week was incorrect. But, the investigator informed Plaintiff Anthony that the investigation was complete and that if he wanted to do anything about it, he would need to consult with an attorney.

36. The investigator did not speak to (or seek to interview) any of the other Plaintiffs (other than the above-described call from Plaintiff Anthony) before making her findings.

37.     Plaintiff Anthony also contacted the investigator's supervisor, Larry Benjamin, the Assistant District Director for the Savannah Area Office for the DOL. During the conversation, Director Benjamin agreed with Plaintiff Anthony, that in looking at the files, the overtime back pay (as to Plaintiff Anthony) should be in the range of $13,000-14,000, rather than the approximate $2,000 that the investigator had reported. Director Benjamin then informed Plaintiff Anthony that he would speak with the investigator about her calculations and get back to him. However, Director Benjamin did not follow up with Plaintiff Anthony. After not hearing anything, Plaintiff Anthony reached out to Director Benjamin again, who informed Plaintiff Anthony that he had not yet spoken with the investigator, but that he would and get back to Plaintiff Anthony. In the meantime, the DOL (at the direction of the investigator), made its final determination and instructed Concrete Supply to issue settlement checks (covering a limited 2-year period that is smaller than the time period that the Plaintiffs seek to recover here) to Defendant's drivers, including Plaintiffs, based on the erroneous 5 hour overtime average applied to them.

38.     In light of the above-referenced facts, the DOL's investigation and supervision of Defendant's settlement with Plaintiffs and those similarly situated with Plaintiffs was inadequate.

11

## "Settlements"

39. On April 1, 2016, Defendant held a mandatory meeting with its driver employees, including some of the Plaintiffs, indicating that Defendant had been audited by the DOL and would now be issuing checks to the drivers. Defendant's owner Burt Bailey told the drivers that he was only required to pay any money to approximately 11 or 13 drivers, but that "out of the kindness of his heart" he was going to pay all drivers. Defendant did not, however, explain that acceptance of any such check might constitute waiver of those employees' rights to bring any personal action under the FLSA.

40. After the meeting, Defendant had each employee, including Plaintiffs, come to the office individually to retrieve his settlement check[1] and sign a WH-58 "Receipt for Payment of Back Wages" for the period November 3, 2013 through November 1, 2015.

41. Under the circumstances, at least Plaintiff Octavius White did not believe he could refuse to sign the WH-58 receipt or refuse the check. On

---

[1] Plaintiffs agree that these checks should be credited in favor of Defendant against any amounts owed by Defendant under the proper calculation of FLSA benefits owed to Plaintiffs.

information and belief, other Plaintiffs and those similarly situated with Plaintiffs were under the same false beliefs with respect to the WH-58 receipts and/or checks.

42. No representative for the DOL was present during Defendant's presentment of the WH-58 receipts and checks to Plaintiffs, and on information and belief, to others similarly situated to Plaintiffs.

43. Plaintiffs (and on information and belief, others similarly situated to Plaintiffs) were not provided an opportunity to consult with counsel prior to or at the time of being presented with the WH-58 receipts or checks.

44. Plaintiff Octavius White did not read the WH-58 receipt, but signed it and cashed the check provided to him. Neither Defendant nor anyone at the DOL informed him that signing the WH-58 receipt or cashing the check would waive any rights he might have to pursue additional-owed back wages. Plaintiff Octavius White asserts that any alleged waiver by him was neither informed nor meaningful.

45. Plaintiff Turner did not read the WH-58 receipt, but signed it and cashed the check provided to him. Neither Defendant nor anyone at the DOL informed him that signing the WH-58 receipt or cashing the check would waive any rights he might have to pursue additional-owed back wages. Plaintiff Turner asserts that any alleged waiver by him was neither informed nor meaningful.

13

46. Plaintiff Anthony did not sign the WH-58 receipt. Rather, he signed a separately-typed receipt that indicated his refusal to sign the WH-58 receipt but that he did, in fact, receive a check. Neither Defendant nor anyone at the DOL informed him cashing the check would waive any rights he might have to pursue additional-owed back wages. Plaintiff Anthony asserts that any alleged waiver by him was neither informed nor meaningful.

47. Plaintiff Bussey did not sign the WH-58 receipt. Rather, he signed a separately-typed receipt that indicated his refusal to sign the WH-58 receipt but that he did, in fact, receive a check. Neither Defendant nor anyone at the DOL informed him cashing the check would waive any rights he might have to pursue additional-owed back wages. Plaintiff Bussey asserts that any alleged waiver by him was neither informed nor meaningful.

48. Plaintiff Jarrett did not sign the WH-58 receipt. Rather, he signed a separately-typed receipt that indicated his refusal to sign the WH-58 receipt but that he did, in fact, receive a check. Neither Defendant nor anyone at the DOL informed him cashing the check would waive any rights he might have to pursue additional-owed back wages. Plaintiff Jarrett asserts that any alleged waiver by him was neither informed nor meaningful.

49. Plaintiff Anthony White did not sign the WH-58 receipt or any other form because he was not sure that the amount represented on the WH-58 receipt and on the check was the proper amount owing to him. Because Plaintiff Anthony White would not sign the WH-58 receipt, Defendant did not initially distribute the check to him. However, after instructing Plaintiff Anthony White to leave and while Plaintiff Anthony White was on his way home, Defendant called Plaintiff Anthony White and told him to come back and pick up his check and that he would not have to sign any form. Neither Defendant nor anyone at the DOL informed him cashing the check would waive any rights he might have to pursue additional-owed back wages. Plaintiff Anthony White asserts that any alleged waiver by him was neither informed nor meaningful.

50. Plaintiff Wilson did not sign the WH-58 receipt. Rather, he signed a separately-typed receipt that indicated his refusal to sign the WH-58 receipt but that he did, in fact, receive a check. Neither Defendant nor anyone at the DOL informed him cashing the check would waive any rights he might have to pursue additional-owed back wages. Plaintiff Wilson asserts that any alleged waiver by him was neither informed nor meaningful.

## COUNT I – FLSA VIOLATIONS

51.     Plaintiffs re-allege paragraphs one (1) through fifty (50) and herein incorporate them by reference to this count.

52.     Defendant's policies, as stated above, have caused Plaintiffs, and those similarly situated to Plaintiffs, to be deprived of wages due to them.

53.     Defendant's policies and actions as stated above were willful and constitute violations of the FLSA, 29 U.S.C. §§ 206-207, requiring overtime compensation to be paid at a rate not less than one and one-half times the regular rate of rate of pay for hours worked over 40 in a given week, and the regulations promulgated thereunder by the Department of Labor, 29 C.F.R. 785.

54.     Under 29 U.S.C. 216(b), Defendant is liable to Plaintiffs, and those similarly situated to Plaintiffs, in the amount of their unpaid regular and overtime wages, an additional amount as liquidated damages, and their reasonable attorneys' fees and costs of this action.

## COUNT II – BREACH OF CONTRACT

55.     Plaintiffs re-allege paragraphs one (1) through fifty-four (54) and herein incorporate them by reference to this count.

56. Defendant contracted with Plaintiffs to pay them 27% of the revenue earned by each truckload delivered. However, Plaintiffs were paid 27% of a lesser amount, and not that which was earned by each truckload delivered.

57. Defendant's policies, as stated above, have caused Plaintiffs to be deprived of wages that it had contracted to pay them.

58. Under state law, Defendant has breached its contractual obligations to Plaintiffs in the amount of their unpaid wages, has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense. Therefore, Plaintiffs are entitled to recover reasonable attorneys' fees and expenses of litigation from the Defendant pursuant to O.C.G.A. §13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray this Court grant the following relief:

a. A trial by jury pursuant to Fed. R. Civ. P. 38(b);

b. An award of past due wages for all Plaintiffs for the period April 28, 2013 – April 1, 2016 (three years preceding the filing of this lawsuit through the date Defendant changed its policies), together with interest thereon;

c. That the Court award Plaintiffs liquidated damages, together with interest thereon;

d. That this Court award Plaintiffs for consequential damages naturally flowing from the breaches of contracts described herein;

e. That this Court award Plaintiffs their reasonable attorneys' fees and expenses of litigation;

f. That Plaintiffs be awarded prejudgment interest, their costs and disbursements herein;

g. That Plaintiffs be awarded appropriate damages and attorneys' fees and expenses of litigation for the violations of state law alleged herein; and

h. Any and other such further relief this Honorable Court or the Finder of Fact deems equitable and just.

Respectfully submitted this 28th day of April, 2016.

By: /s/ Douglas R. Kertscher
Douglas R. Kertscher
Georgia Bar No. 416265
Jennifer L. Calvert
Georgia Bar. No. 587191
**HILL, KERTSCHER & WHARTON, LLP**
3350 Riverwood Parkway, Suite 800
Atlanta, GA 30339
Tel: (770) 953-0995

Fax: (770) 953-1358
Email: drk@hkw-law.com
jc@hkw-law.com

*Attorneys for Plaintiffs*